We'll turn to the second case on our calendar, U.S.A. v. Huiberto Viera. If I may, Your Honor. Yes, Ms. Shevitz is appearing by Zoom. Yes, this is Vivian Shevitz. I am appointed counsel to Huiberto Viera. I'm going to start by saying that if there are policy considerations in connection with the previous case, the policy considerations investigating and using a reverse sting in this case are very important as well. I'm going to ask you to reverse a conviction or vacate the sentence at least in this reverse sting case because here a man was targeted who did not commit violent crimes. And the agent who had a cottage industry of creating these crimes of previously incarcerated men who had the misfortune of knowing his co-operator, this man had not committed violent crimes in the past. Ms. Shevitz, let me just ask you two questions about that. The first is I think you're suggesting that the government under your theory of the law would not be allowed to use a reverse sting in a large narcotics transaction. Someone who is a huge supplier of narcotics, 30 kilos, 40 kilos, you would say reverse stings as a matter of law cannot be used for a major drug deal like that if there's no allegation of guns or violence? Is that your suggestion? No, that is far from my suggestion. So when you say there's no violence, what do you mean? You're saying you can't use a reverse sting because there was no violence. What do you mean by that? Okay. What I mean is the agent himself said that he was targeting violent drug dealers for this sting operation. The sting operation was not only dealing drugs or dealing large quantities of drugs, but it involved setting up a violent encounter where the defendants were encouraged to get guns and armed themselves in order to steal drugs on this one occasion. So is what you're saying that reverse stings should be forbidden when they create a situation where possible violence would occur? Is that what you're saying? I would love to have that kind of ruling. I don't know if that one would fly. Nothing has flown yet. Well, you know, our cases are pretty strong that reverse stings are okay unless they're shocking. In this case, however, the playbook that the agent was supposedly following was having his co-operator target violent men who had committed violent drug offenses in the past. And it is only on that basis that he said he, the co-operator, and he, the agent, Riley, they said that they had confirmed that my client, Mr. Vieira, had committed violent drug crimes in the past. And he hadn't. All I'm saying is that when the agent says in the case which he did here that I checked, I corroborated the informant who set up these people. In fact, he didn't. What should the remedy be then when the reverse sting is based on a fact that does not exist, which was the premise of the investigation? Well, the premise of the investigation, though, the premise of the investigation was that they had spoken in jail and they had indicated in jail that he wanted to do an armed robbery of drug dealers, right? Wasn't that the premise of the sting? Well, that is something that the co-operator said, yes, when he was talking in jail. But talking in jail was, oh, hey, man, I want to do kilos here or there. I want to find a Colombian. I want to find a Colombian and rob him of cocaine. And then they discussed it further on another occasion. And my understanding is that your client had an AK-47 at his house, recruited other individuals to participate in the robbery, and had an AK-47 at his house, right? Apparently, that's the facts are that he was able... So how did they create that? No, I'm not saying they created access to weapons. But if you're going to target everybody who has access to weapons, you might as well put everybody in jail now. That's what I'm saying. It's not access to guns. Getting a person who has an access to gun, who's never gotten one or used one in drug crimes in the past, is counterproductive. And in my view, and in many people's view, the value to society is zero. Counsel, let me tell you what bothers me about this case, which I will press with opposing counsel. It's got less to do with your client, but has to do with the fact that what the government did was to take away the discretion of the district court by creating an amount which sets mandatory minimums. And that has nothing to do with whether your client was entrapped or not entrapped. I don't think he was. Anything to do with that. But what bothers me is when there is a structure that gives the district court discretion to have prosecutors and the police act intentionally to take away that discretion from the district court. I'm not sure we can do anything about it, but that really troubles me. Well, Judge Ramos, I'm sorry, I couldn't hear you very well, Judge, but if you were finished, I think you were saying. Judge Ramos, though, had stated on the record that he would not have given my client the sentence if he wasn't required to. And I do argue in our brief, though, that really in regard to quantity, because only because my client said, OK, great, great, I'll take 22 kilos if that's what you say is coming. That's not really an agreement to quantity. It's not really foreseeable. It's acquiescing in something the government said in a case where, especially since my client hadn't dealt quantity in the past, he probably would have said, OK, if it's four kilos. Or something much less that would not implicate this mandatory minimum. So I think that you can do something in this case about that. And that is because it's an instance of sentence manipulation, which this court has not ever reversed. And no court has ever reversed, but it should. It can and it should. But let me turn briefly, because I see my time is running out, to the 924C. In this case, as in Hayward, a case discussed in my brief, it's impossible to confirm that the verdict rested on the drug conspiracy predicate as opposed to the Hobbs Act conspiracy predicate. As the district court said, wasn't the entire purpose of the Hobbs Act conspiracy to obtain and distribute narcotics? Wasn't that the whole purpose of the robbery? There was no other purpose. This would be. Well, the purpose was not to use them. But there was no other purpose. They have to go hand in hand. The jury could never find that the gun was used for the conspiracy to rob, but didn't involve a conspiracy to distribute drugs when the robbery was to get the drugs to distribute. I don't agree with you, Judge. I don't agree with you. I think that the fact that somebody says it's, quote, intertwined. What does that mean? They were going to go rob drugs. It's a separate charge in the indictment. Count two charges, the Hobbs Act conspiracy. And all the charges is they were going to obstruct, delay commerce by stealing drugs that didn't exist. But a separate count talks about a drug conspiracy, which talks about that they would they would distribute and possess with an intent to distribute drugs. And in fact, I believe the documents read page six confirms that Vagai Vieira intended to go back and sell as he had in the past in tandem. Now, his history is that there was no violence dealing drugs. Santiago, the recruit, said he was just a low level hand-to-hand drug dealer. So when you say, OK, we're going to take this, we're going to assume because something is interrelated or intertwined in the government's mind that that was also in a paladin's mind. It wasn't. He was planning to whatever he was doing. He was planning to go back and peacefully, if I can use the word, peacefully sell drugs in tandem. And because of that, one cannot say. You can't confirm, I believe, that the juries. But he had to use the drugs. He had to use the gun to get the drugs. That's part of the conspiracy, too. Whether he's going to, quote unquote, peacefully distribute them without a gun doesn't take away from the fact that he had to use a gun to get the drugs in the first place. Right? Well, I don't know if he had to. He didn't have to. No, but he did. The jury found him guilty of both, is my point. They found him guilty of both. And if they found him guilty of the conspiracy to rob and using a gun in connection with that, they would have found him guilty to use the gun to obtain the drugs during the robbery, which is part of the drug conspiracy. There are no other drugs in the case. Well, that is not how the drug conspiracy is charged. The drug conspiracy is charged so that they would distribute drugs. Okay, that's count one. It doesn't say that they were going to rob the drugs. Yes, the government charged it in a, quote, intertwined manner. But it's the government's burden in this case because it was the charging entity. This was charged, of course, in 2014. And Davis was decided in 2019. I don't know if the government would have still charged it then. But in fact, a jury could find that the purpose that what the defendant had agreed to was to somehow get the drugs. That was a Hobbs Act conspiracy. And then take the drugs as they had in the past and sell them hand to hand on the street. So is that part of the drug conspiracy, too, that they're going to rob people? I don't think so. That was a separately charged conspiracy. It wasn't charged as one conspiracy with two objectives. Thank you, Ms. Evans. I've given you some extra time and I'm glad to do so. You've reserved two minutes. Thank you, Judge. We'll hear from the government. Mr. Harper, go ahead. May it please the court. My name is Brandon Harper and I'm an assistant United States attorney in the Southern District of New York. I represent the United States in this appeal. I did not represent the government below. I'd like to start with the issue of the drug quantity in this case. And the question that you praised, Judge Calabresi, of whether there was sentencing manipulation here because the amount of drugs that were the object of this conspiracy invoked the mandatory minimum, the B1A weight for both the cocaine and the heroin. And what is clear on the record is that it was not the government that introduced the idea of a substantial quantity of drugs in this case. It was Vieira. When in 2004 he talked to Rodriguez, he said, as Judge Bianco pointed out, he was interested in robbing kilos of cocaine from a Colombian. The government was not involved at the case at that point. The government had not contemplated any sting related to Vieira at that point. It's not clear that Vieira was even on the government's radar during that conversation. Rodriguez's point is that he would have just as easily agreed to a four kilo cocaine robbery as he would, you know, a 22 kilo or a six kilo cocaine robbery. And the government, just in a reverse sting where there are no real drugs, just picks a quantity, tells the informant to discuss a quantity that is above the mandatory minimum. So is that okay or not okay? Your Honor, in the government's view, it is okay. Because the government knew at the time that Vieira was interested in robbing a substantial quantity of drugs. And this court has never reversed a conviction on the theory of sentencing manipulation. No, we have never done it. We have never done it. And most of the time we've never done it because we've focused on the defendant. And focusing on the defendant, usually if it isn't an attackment, there are many good reasons. My concern, as I said before, is a different one. When you have a structure that generally gives courts discretion, I am troubled by the government picking an amount which is just sufficient to destroy that discretion. You know, I don't care whether you call it sentence manipulation, whether you call it ambiguities, whether you call it mustard plaster. What troubles me is the removal of discretion from courts by the government in general. I don't know that we can do anything about it, but it is something that really one ought to think about and maybe U.S. attorneys ought to think about in what they tell the police when they do sting. And, Your Honor, I think that's why this court has said in acknowledging that it has not, as you just mentioned, reversed any case on this theory, that even if this court were to recognize that sentencing manipulation as a valid theory, that the government conduct in the case would have to be outrageous. And in this case, there is no outrageous government conduct because the government was presented with an individual who was ready and willing to participate in a robbery of a substantial quantity of narcotics. Unless you think it is outrageous in itself to do 24 rather than 23, knowing that that removes the district court's discretion. And that's the only argument. You'd have to say that that is outrageous in itself. That's correct, Your Honor, and no court that I'm aware of has so held. And certainly on these facts, the government's position is that it would not be outrageous given what was known about Vieira at the time. I'd like to also discuss the issue of the reverse sting. Can you find me a case where we have discussed that issue and decided that it is not outrageous when this is going on? Or have all the cases involving what you call sentence manipulation focused on defendants? That is, you tell me there is no case where we have done that. I agree with you. Is there a case where we have expressly said that's okay? No, Your Honor. I'm not aware of a case where the court expressly said that it was okay based on the facts that you're describing in your hypothetical. But the cases are very clear that the court has said that even if it were to recognize this theory of sentencing manipulation, it would need to find outrageous government conduct. And certainly I'm not aware of a case, and Vieira has not pointed to any case, that suggests that where a defendant says, I'm interested in participating in a robbery to rob kilogram quantities of drugs, and then was presented with an opportunity to do so, that that was determined to be outrageous government conduct. Just in terms of the quantity here, he agreed to 22 kilos, and he would only have agreed to 5 kilos for purposes of the mandatory minimum, right? That's correct. That's correct, Your Honor. I'd like to briefly discuss the issue of the reverse sting. This court has repeatedly held that these stings are appropriate, and as Judge Calabresi said to opposing counsel, the cases are pretty strong that reverse stings are okay. Now, as the jury found here, Vieira was not entrapped. He had bragged to the informant about dealing drugs in the past. He bragged about using weapons. He bragged about committing robberies. And when the informant pitched him on this robbery, he was enthusiastic in deciding to participate. He volunteered ideas about how the drugs would be divvied up. He recruited accomplices, including Santiago, who testified at trial. He brought a loaded AK-47 from his home. He went with his accomplices to other locations to help retrieve the other two firearms that were used. And he was a worthy investigative target. He made clear that he was interested in prospectively engaging in violent criminal conduct and in this narcotics conspiracy. There was no coercion here. There was no invasion of his person. And nothing about the government's conduct was outrageous. You said one thing. I didn't see this in your brief. Maybe I misheard you. Did you say that they discussed robberies that he had done in the past? I didn't see anything that he had done, robberies of drug dealers in the past. I know he was enthusiastic and he was interested, but did he actually admit to having done robberies in the past? He said that he had, I apologize if I misspoke. He said at supplemental appendix 27 to 32 that he wanted to commit a robbery and that he wanted to do something prospectively with Rodriguez. What were those pages? That was in the supplemental appendix at pages 27 to 32. And in particular, page 31, where he proposed to Rodriguez that they do something together when they get out. Finally, on the Davis issue, the robbery and drug conspiracies here were inextricably intertwined. The entire plot was to rob drug dealers using guns and then to take those drugs and possess them with the intent to further distribute them. It was the same plot by the same co-conspirators. I'm not sure whether this case is closer to Hayward or to Eldridge. But it's interesting to me how this case is identical to Vasquez, which was a summary order in which we came out your way. We came out by summary order. But still, that's rather interesting to me. Your Honor, I agree. It is interesting that these facts are almost identical to the facts in Vasquez. And with respect to Hayward, there are a number of ways that this case is distinguishable. Chief among them is that in Hayward, the court concluded that there was a factual separation, a distinct factual separation, between the two predicate offenses, which is not the case here. And in Hayward, the judge in issuing the jury instructions spoke, I think, on three occasions about the fact that the crime of violence was a predicate offense but didn't talk about the narcotic offense predicate. That's not the case here. And in addition, Vieira certainly could not have possessed the gun in furtherance of one of the predicate offenses without the other. Because as Judge Bianco said, the entire purpose of the firearms was to rob the dealers of the drugs, which were the object of the narcotics conspiracy. And so as in Eldridge and in Vasquez, the defendant cannot show that the jury's guilty verdict on the section 924C count relied only on the Hobbs Act predicate. And for those reasons, the court should affirm the judgment and conviction below. Unless the panel has any additional questions for me, I'll rest on our submission. Thanks very much. Ms. Sherrod, you reserve two minutes. Yes. Once again, the court suggests that the U.S. attorney should think about how they charge before they charge in this way instead of taking action to set aside a sentence or conviction when the facts are so skewed by the prosecutor's desire to up the ante. I believe that, yes, he agreed to 22 kilos, which was much more than 5. But that's because the government said 22 kilos. It's likely, it's more than likely that if the government said we're going to get you 4 kilos, he would have said, fine, let's go get 4 kilos. The point is that this did not evidence an agreement to quantity. It represented acquiescence, and the court should do something about it when it results in taking away discretion to sentence somebody according to their own conduct. The conduct described in these cases, and once again, this was the culmination of a series of cases, is outrageous because of this factor, because of the sentencing guidelines, which didn't exist when cases like Archer were decided. In this case, the man has been lured to commit a federal crime, lured to commit it with guns, lured to go act on access to guns, and to commit something that it is very likely would never have happened but for the government's participation here. I asked the court to reverse the conviction on the 924C. One cannot say that it rested solely on the proper predicate, because this man did not deal violently. He may have been interested in doing something, but he didn't. Thanks very much. Thank you. We're grateful to both counsel, well argued in both cases, and we'll reserve the decision.